IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DEMETRIUS LAREDO WALKER,

     Plaintiff,

v.                                   CASE NO. 1:17-cv-79-MW-GRJ

GARY HERRON, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     This matter is before the Court on ECF No. 80, Defendants' Motion for Summary Judgment. Plaintiff has filed a response in opposition. ECF No. 91. The motion is, therefore, ripe for review. For the reasons explained below, it is recommended that Defendants' Motion for Summary Judgment be **DENIED**.

## I.  INTRODUCTION

     Plaintiff, a prisoner in the custody of the Florida Department of Corrections ("FDOC"), currently confined at Franklin Correctional Institution, initiated this case by filing a complaint under 42 U.S.C. § 1983, which he later amended. Compl., ECF No. 1; Am. Compl., ECF No. 23. Plaintiff names two Defendants: (1) Captain Gary Herron, formerly a

corrections sergeant at the Mayo Correctional Institution (CI) Annex; and Edward Davenport, formerly a corrections officer assigned to Mayo CI Annex.

Plaintiff alleges that, on September 28, 2016, while he was confined at Mayo CI Annex, Herron used excessive force by spraying him with chemical agents while Davenport failed to intervene or stop Herron. Based on the incident, Plaintiff alleges Defendants violated his rights under the Eighth Amendment and Florida state tort law. Plaintiff's Amended Complaint sought a declaratory judgment, compensatory and punitive damages, costs in the suit, and any additional relief the Court deems proper.

By previous order, this Court found that the Prison Litigation Reform Act bars Plaintiff's claims for punitive and compensatory damages because Plaintiff failed to allege more than a *de minimis* physical injury. ECF No. 29.[1] Accordingly, Plaintiff is only entitled to pursue a claim for nominal damages.

---

[1] In that Order, the Court also denied Defendants' motion seeking dismissal of Plaintiff's state-law assault and battery claims under Fla. Stat. § 768.28(9)(a).

Defendants now move for summary judgment, arguing that: (1) Plaintiff's claims are barred by *Heck v. Humphrey*[4]; and (2) Defendants are entitled to qualified immunity. ECF No. 80. In support of their motion, Defendants have submitted: (1) Excerpts from the Deposition of Demetrius Walker (ECF No. 80-1 ("Walker Depo.")); (2) Declaration of Gary Herron and attached Incident Report (ECF No. 80-2 ("Herron Decl.")); (3) Declaration of Edward Davenport and Attached Incident Report (ECF No. 80-3 ("Davenport Decl.")); (4) Fixed-wing video[2] and handheld video footage; (5) Plaintiff's Disciplinary Report Record (ECF No. 80-4 ("DR")); and (6) Face Sheet of Demetrius Walker (ECF No. 80-5 "Face Sheet")).

Plaintiff filed a Response in opposition to the Motion and attached the following: (1) Plaintiff's Declaration ("Walker Decl."); (2) E.P.A. Sigma-Aldrich Safety Data Sheet ("E.P.A. Safety Data Sheet"); (3) Excerpts from the Deposition of Demetrius Walker ("Walker Depo."); (4) Defendants' Answer ("Answer"); (5) Davenport's Response to Plaintiff's First Set of Interrogatories ("Davenport Resp. to Interrogs."); (6) Herron's Response and Objections to Plaintiff's Request for Admission ("Herron Resp. to

---

[4] 512 U.S. 477 (1994).

[2] The fixed wing video referred to in this order is the file titled "med.212.1".

RFA"); (7) Herron's Response and Objections to Plaintiff's Amended Request for Admission ("Herron Resp. to Amended RFA"); (8) Herron's Response to Plaintiff's First Set of Interrogatories ("Herron Resp. to Interrogs.); (9) Plaintiff's Informal Grievances; (10) An Excerpt of Plaintiff's Disciplinary Report Record ("DR"); and (11) Plaintiff's Inmate Sick-Call Requests. ECF No. 91-1.

## II. SUMMARY JUDGMENT EVIDENCE

Defendants' version of the events is as follows. On September 28, 2016, while housed at Mayo CI Annex, Plaintiff attended a medical call-out around 9:00 a.m. ECF No. 80 at 2, citing Am. Compl. at 8. Following a disagreement between Plaintiff and a nurse, Plaintiff was escorted to the medical holding cell by Davenport in an attempt by Davenport to calm him down. *Id.*, citing Davenport Decl. Plaintiff entered the holding cell at approximately 9:04 a.m. and was not wearing any restraints. *Id.* at 2-3, citing Fixed-Wing Video at 12:04:00.[3] Approximately two and a half minutes later, Davenport returned to the holding cell with Herron. *Id.* at 3, citing Fixed Wing Video at 12:06:28.

---

[3] Defendants explain in their Motion for Summary Judgment that the time stamp on the fixed wing video appears to be three hours ahead of the actual time. It is undisputed that the events in question took place beginning around 9:00 a.m.

Defendants immediately began unlocking the cell door and feeding flap. *Id.*, citing Fixed Wing Video at 12:06:49. While at the holding cell door, Defendants ordered Plaintiff to submit to hand restraints. *Id.*, citing Am. Compl. at ¶ 15.

Once Defendants ordered Plaintiff to submit to hand restraints, Plaintiff became agitated. *Id.*, citing Herron Decl.; Davenport Decl. Plaintiff removed his blue over shirt and assumed an aggressive stance. *Id.* Herron ordered Plaintiff to cease his aggressive stance and submit to hand restraints, but Plaintiff refused to comply. *Id.*

Defendant Davenport pulled out his radio and walked away from the cell door as he called the control room. *Id.*, citing Davenport Decl.; Fixed-Wing Video at 12:07:05-12:07:15. As Davenport turned around, Herron began to remove his chemical spray bottle in response to Plaintiff's aggressive actions. *Id.* at 4, citing Herron Decl.; Fixed-Wing Video at 12:07:05-12:07:15. Herron broke the seal on the chemical spray bottle and administered a continuous stream of chemical agents to the Plaintiff. *Id.*

Upon returning to the holding cell door, Davenport realized that Herron had administered chemical agents against the Plaintiff and updated the call on his radio. Davenport Decl.; Fixed-Wing Video at 12:07:20-12:07:30.

Once a third officer responded to the cell front, Herron[4] entered the holding cell and placed wrist restraints on Plaintiff. Fixed-Wing Video at 12:07:33. Approximately twenty seconds later, Plaintiff walked out of the holding cell restrained, but under his own power, followed by Herron. *Id.* at 12:07:54. Plaintiff was escorted to the shower for a decontamination wash. Herron Decl.; Davenport Decl. During the escort, the handheld camera started recording the incident, and the camera operator announces the time as approximately 9:10 a.m. *See* Handheld Video.

Following the incident, Plaintiff was charged with two disciplinary violations, one for disorderly conduct and one for failure to obey an order. *See* DR. Plaintiff plead no contest to each and was found guilty. *Id.* Plaintiff lost thirty days of gain time for the disorderly conviction. *Id.* at 13.

Plaintiff's version of the story differs. Plaintiff says that while he was in the holding cell being counseled by Davenport and Herron regarding an issue with the medical nurse, he repeatedly asked Defendants why he was put in administrative confinement for refusing to talk to the nurse. ECF No. 91, citing Am. Compl.; Pl.'s Decl., ECF No. 91-1 at 2-4. Davenport then

---

[4] Defendants' Motion says Davenport, but it is Herron who enters the cell.

stated to Plaintiff, "I know how to deal with stupid niggers like you!" to which Plaintiff responded, "What have I done?" *Id.*

When Plaintiff started to turn around for Herron to apply the hand-restraints, Davenport stated, "Spray his ass," and Herron sprayed Plaintiff with chemical agents in his face and mouth two times. *Id.* at 2-3, citing Am. Compl., Pl.'s Decl. at 2-4. Once Plaintiff was in hand restraints, Herron then sprayed Plaintiff three additional times about the face and left ear. *Id.* at 3, citing Am. Compl.; Pl.'s Decl., ECF No. 91-1 at 2-4; Plaintiff's Depo., ECF No. 91-1 at 28-31.

As this was occurring, Davenport remained outside the holding cell and did not intervene or stop Herron. *Id.*, citing Am. Compl.; Pl.'s Decl., ECF No. 91-1 at 2-4; Plaintiff's Depo., ECF No. 91-1 at 23-24; Answer, ECF No. 91-1 at 37; Davenport Resp. to Interrogs., ECF No. 91-1 at 42; Herron's Resp. to RFA, ECF No. 91-1 at 48; Herron Resp. to Amended RFA, ECF No. 91-1 at 51. Plaintiff says he did not resist, threaten, or disobey a lawful command or make an aggressive gesture or touch Defendants, or break any prison rules. *Id.*, citing Am. Compl.; Pl.'s Decl., ECF No. 91-1 at 2-4.

After the incident, Plaintiff was escorted to administrative confinement for a decontamination shower but was not given soap. *Id.*, citing E.P.A.

Safety Data Sheet. On December 6, 2016, Herron made "threats" toward

Plaintiff. *Id.* at 4, citing Plaintiff's Informal Grievances, ECF No. 91-1 at 59-

61.

 The fixed-wing video footage shows the following. The video shows

Davenport escorting Plaintiff into a holding cell. Plaintiff enters the holding

cell at approximately 9:04 a.m. Fixed-Wing Video at 12:04:00. He is

wearing a blue over-shirt and his hands are not restrained. *Id.*

Approximately two and a half minutes later, Davenport returns to the

holding cell with Herron. *Id.* at 12:06:30. Davenport immediately begins

opening the door, and finally gets it open about eighteen seconds later.

Video at 12:06:38. The feeding flap opens as the door opens. *Id.*

 Davenport and Herron stand in the doorway for roughly fifteen

seconds. *Id.* at 12:06:50 to 12:07:05. It appears Davenport and Herron are

speaking to Plaintiff, but the video is completely inaudible. It is also not

possible to see inside the cell from the position of the fixed-wing camera,

except for a very restricted view of the inside left corner. It is also not

possible to see Plaintiff inside the cell. After fifteen seconds, Herron

reaches to his waistband to grab what appears to be a bottle of chemical

spray, although it is difficult to see because the cell door is obstructing the

camera view. *Id.* at 12:07:07. At the same time, Davenport pulls out his two-way radio and walks down the hall. *Id.*

Herron, standing in the doorway, appears to hold out his arm, spraying inside the cell, while Davenport paces up and down the hall, talking into the radio. *Id.* at 12:07:10 to 12:07:30. When a third officer arrives, Herron enters the cell. *Id.* at 12:07:33. Davenport and the third officer remain in the hallway outside of the cell. *Id.* Approximately twenty seconds later, Plaintiff walks out of the holding cell, his hands in restraints, but under his own power, Herron following behind him. *Id.* at 12:07:55. Plaintiff is not wearing a blue over shirt.

## III.  SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g.,*

*Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV.  DISCUSSION

### A. *Heck*-bar

Defendants assert that this Court lacks subject matter jurisdiction over Plaintiff's claims because they are barred by *Heck*. Specifically, Defendants argue that if Plaintiff's operative facts were proven true in the instant § 1983 action, they would necessarily undermine and contradict the prison disciplinary hearing that found him guilty of disorderly conduct.

Following the incident, Plaintiff was found guilty of disorderly conduct in a prison disciplinary proceeding based on the following facts as recalled by Herron:

> After ordering inmate Walker to submit to hand restraints, he refused my order by becoming disorderly and removing his blue state shirt, throwing it to the floor, assuming an aggressive stance, and making a threatening remark to Officer Davenport and myself. This incident resulted in a reactionary chemical use of force, to bring inmate walker in compliance to a lawful command.

D.R., ECF No. 80-4 at 12. Plaintiff plead no contest to the allegations, was found guilty, and lost thirty days of gain time for the disorderly conduct violation. *Id.* at 13.

In this lawsuit, Plaintiff maintains that he followed Defendants' verbal orders and complied with their demand to submit to hand restraints. Nevertheless, he says, Defendants used force against him "without need or provocation." ECF No. 23 at 11. Defendants contend that success on Plaintiff's § 1983 claims would necessarily undermine the basis for his disciplinary conviction.

Under *Heck,* state prisoners are barred from pursuing § 1983 actions that, if successful, would necessarily imply the invalidity of a plaintiff's conviction. 512 U.S. at 477. In considering whether a § 1983 claim is *Heck*-barred, the Court must determine whether a plaintiff's factual allegations, if proven, would necessarily undermine the validity of the plaintiff's conviction. *Edwards v. Balisok*, 520 U.S. 642, 646-48 (1997). A prisoner's § 1983 claim is also *Heck*-barred where the action, if successful would necessarily imply the invalidity of a prison disciplinary conviction. *Id.* at 648.

However, "as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not *Heck*-barred." *Dyer v. Lee,* 488 F.3d 876, 879-80 (11th Cir. 2007); *see also Beecher v. Jones*, No. 3:08-cv-416-MCR-EMT, 2010 WL 5058555 (N.D. Fla. Oct. 29, 2010) ("[T]he 'logical necessity' that is at the heart of the *Heck* opinion is not clearly present here: a successful § 1983 suit by Plaintiff for the use of

excessive force through the application of a chemical agent would not 'necessarily imply the invalidity of his conviction' for creating a minor disturbance.").

The Eleventh Circuit recently held, on facts similar to these, that *Heck* did not bar a prisoner's excessive force claim because success on the § 1983 would not *necessarily* imply that the underlying disciplinary conviction is invalid. *Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018). In that case, Dixon, the Plaintiff, was found guilty of battery or attempted battery on a correctional officer, and his punishment included a loss of gain time. *Id.* at 1238.

Although their versions of the events conflicted, the correctional officer alleged that Dixon ignored several orders to leave the officers' station and, when he did turn to leave, he made a fist with his hand and turned back to lunge at the officer, requiring the officer to use force in a manner necessary to subdue Dixon. *Id.* at 1237. Dixon then filed a lawsuit under § 1983 alleging that the officer used excessive force against him. *Id.* at 1238. In finding that *Heck* did not bar Dixon's claims, the Eleventh Circuit said:

> When a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the *Heck* bar does not apply. Such is the case here. The

gravamen of Dixon's § 1983 complaint is that Pollock used excessive force against him. The success of this claim is not necessarily dependent on whether Dixon lunged at Pollock or not. His disciplinary punishment, of course, establishes that he did. But that factual finding is not determinative of whether Pollock used excessive force against Dixon. It is logically possible both that Dixon lunged at Pollock and that Pollock used excessive force against him. Because "there is a version of the facts which would allow the [punishment] to stand" alongside a successful § 1983 suit, *Heck* does not control.

*Id.* at 1239-40 (footnote and citation omitted). For the same reason, *Heck* does not bar Plaintiff's claim in this case. Even though Plaintiff was punished for refusing Herron's orders, behaving disorderly, assuming an aggressive stance, and making a threatening remark to Herron and Davenport, these factual findings are not determinative of whether Defendants used excessive force against Plaintiff in response to Plaintiff's conduct. In other words, success on Plaintiff's excessive force claim would not necessarily imply that the disciplinary punishment was invalid, nor would it logically contradict the facts found at the hearing. It is logically possible both that Plaintiff engaged in disorderly conduct and that the Defendants used excessive force against him. Accordingly, *Heck* does not bar Plaintiff's claims.

## B. Qualified Immunity

Defendants further request summary judgment on the grounds that they are entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Discretionary authority" includes all actions by a government official that "were undertaken pursuant to the performance of his duties," and were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it

obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (citing *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

Defendants argue that the evidence shows that no constitutional violation occurred, either by an unprovoked use of chemical agents or the use of chemical agents after Plaintiff was restrained. ECF No. 80 at 14.

The Eighth Amendment prohibits prison officers from using excessive force against prisoners. *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010). Eighth Amendment claims require a two-prong showing: an objective showing of a deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities" and a subjective showing that the official had a "sufficiently culpable state of mind." *Id.* at 1304, citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations and quotations omitted). As to the subjective prong, excessive-force claims require a showing of a heightened mental state— that the defendants applied force "maliciously and sadistically for the very purpose of causing harm." *Id.* (citations omitted). Thus, the "core judicial inquiry" for an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)

(quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

The Eleventh Circuit has identified five factors to help evaluate

whether force was applied maliciously or sadistically. *See Pearson v.*

*Taylor*, 665 F. App'x 858, 8633 (11th Cir. 2016), citing *Danley v. Allen*, 540

F.3d 1298, 1307 (11th Cir. 2008), overruled on other grounds. The five

factors include the following: (1) the need for force; (2) the relationship

between that need and the amount of force used; (3) the extent of the

resulting injury; (4) the extent of the threat to the safety of staff and

inmates, as reasonably perceived by the responsible official on the basis of

facts known to that official; and (5) any efforts made to temper the severity

of the use of force. *Id.*, citing *Whitley v. Albers*, 475 U.S. 312, 320-21

(1986)); *Fennell v. Gilstrap*, 559 F.3d 1212, 1218-20 (11th Cir. 2009)

(applying these factors).

In general, prison officers are authorized to use force when a prisoner

repeatedly fails to obey an order. *Danley*, 540 F.3d at 1307. Officers are

not required to convince every prisoner that their orders are reasonable

and well-thought out before resorting to force. *Id.* Notably, the Eleventh

Circuit has recognized that "[p]epper spray is an accepted non-lethal

means of controlling unruly inmates." *Id.* It is designed to be disabling

without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation. *Id.* at 1308. Therefore, "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Id.* at 1307-08. A "short" burst is around five seconds or less. *See id.* (collecting cases).

However, "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement." *Thomas*, 614 F.3d at 1311, citing *Danley*, 540 F.3d at 1311 (holding that prolonged exposure to pepper spray due to a failure to properly decontaminate an inmate may form the basis of an Eighth Amendment claim); *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (use of additional bursts of pepper spray after inmate attempted to comply with officer's orders and which possibly contributed to inmate's asphyxiation and death sufficiently alleged objective component of excessive force claim); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.")).

Furthermore, the Eleventh Circuit has held that a correctional officer's spraying a prisoner with pepper spray without penological justification, "would be repugnant to the conscience of mankind" even if the prisoner did not suffer significant injury. *Stallworth v. Tyson*, 578 F. App'x. 948, 954 (11th Cir. 2014) (overturning grant of summary judgment to correctional officer who sprayed plaintiff prisoner with pepper spray), quoting *Whitley*, 475 U.S. at 327.

Here, Plaintiff's sworn testimony creates genuine issues of material fact as to whether Herron violated Plaintiff's Eighth Amendment rights by spraying Plaintiff unnecessarily and whether Davenport violated Plaintiff's Eighth Amendment rights by instructing Herron to spray Plaintiff and failing to intervene thereafter. [5] *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("[W]hen conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version.").

Based on Plaintiff's version of events--which the Court is required to construe in favor of the non-moving party on summary judgment--there was

---

[5] A prison official who was present at the scene and failed to take reasonable steps to protect the victim from another officer's use of excessive force, can be liable for his own nonfeasance. *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). An officer has a duty to intervene if he observes a constitutional violation and is in a position to intervene. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).

no need for the use of chemical agents. In Plaintiff's sworn testimony Plaintiff says he was fully compliant in the cell, even before Herron applied hand restraints. Applying chemical agents twice on a fully compliant prisoner confined to a holding cell and three additional times at close range after that prisoner is compliant and restrained is not penologically justified and constitutes excessive force.

Moreover, a review of the fixed-wing video footage does not conclusively resolve these factual disputes in favor of Defendants. "[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013). But even where the entire series of events is recorded, video evidence is not obviously contradictory if it fails to convey spoken words or tone, or fails to provide an unobstructed view of the events. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010).

The footage shows that, after opening the holding cell door, Davenport and Herron stood in the doorway for roughly fifteen seconds. It appears that Davenport and Herron were speaking to Plaintiff, but the video is completely inaudible. It is not possible to see inside the cell from the position of the fixed-wing camera, save for a very restricted view of the

inside left corner. It is also not possible to see Plaintiff inside the cell. After roughly fifteen seconds, Herron reached to his waist to grab what appears to be a bottle of chemical spray and begins spraying Plaintiff, although this, too, is difficult to see because the open cell door is obstructing the camera's view.

Defendants contend that, during the disputed fifteen-second span, Plaintiff became agitated, removed his blue shirt, assumed an aggressive stance, and refused to submit to hand restraints. Plaintiff asserts, however, through sworn testimony that during the fifteen seconds he did not resist, threaten, or disobey a lawful command or make an aggressive gesture or touch Defendants, or break any prison rules. The video does not resolve this factual discrepancy because it is impossible to see or hear what is happening inside the holding cell.

In support of summary judgment, Defendants argue that Plaintiff's version of the events is inconsistent with the video evidence. ECF No. 80 at 12. Specifically, Defendants argue that they could not, as Plaintiff alleges, have conversed with Plaintiff through the feeding flap prior to opening the holding cell door because the video shows that when the Defendants approached the holding cell, they immediately began opening the lock, and the feeding flap opens almost simultaneously with the door. *Id.* at 12-13.

Therefore, according to Defendants, the conversation in which Herron says, "I know how to deal with stupid niggers like you!" and Davenport instructs Herron to spray Plaintiff could not have occurred.

This inconsistency is insufficient to show that Defendants are entitled to summary judgment. While it is true that the video footage does not show that any conversation occurred between Plaintiff and Defendant through the feeding flap, after opening the door, Defendants stood in the doorway for roughly fifteen seconds before Herron begins spraying Plaintiff. The conversation Plaintiff alleges occurred could have easily taken place while Defendants were standing in the threshold rather than through the feeding flap. A relatively minor inconsistency such as this does not establish that no reasonable jury could find for the Plaintiff.

Defendants also argue that Plaintiff's deposition testimony that Davenport stood by Herron the "whole time" Herron was spraying him is inconsistent with the fixed-wing video footage showing that Davenport walked down the hall to use his two-way radio while Herron sprayed Plaintiff. Although the video evidence does show that Davenport walked down the hall as Herron sprayed into the holding cell, Plaintiff was, after all, being sprayed with chemical agents. Therefore, the fact that he may not

have seen or recalled seeing Davenport walk away is not only unsurprising, but it also does not entitle Defendants to summary judgment.

Finally, Defendants allege that the fixed-wing video evidence is inconsistent with Plaintiff's claim that Herron entered the holding cell and sprayed Plaintiff three more times at close range after applying hand restraints. *Id.* at 13. Defendants assert that the video evidence shows that Herron was in the holding cell for a total of twenty seconds, and "no reasonable finder of fact would find that in twenty seconds Herron had enough time to either put his chemical spray back on his belt or down somewhere in the cell, take his restraints off his belt, place the restraints onto Plaintiff's wrists, pick his chemical spray canister back up, administer three bursts of spray at close range onto Plaintiff, place the bottle back onto his belt, and follow Plaintiff out of the cell." *Id.* at 13-14.

Although it would require a certain degree of speed and economy to accomplish what Plaintiff alleges occurred in twenty seconds, it is not impossible. Upon review of the fixed-wing video footage, and in viewing all of the summary judgment evidence in favor of Plaintiff, the non-movant, a reasonable jury could certainly credit Plaintiff's version of the events. Accordingly, because there is a genuine dispute of material fact as to

whether Defendants used excessive force on Plaintiff, Defendants are not entitled to qualified immunity.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendants' motion for summary judgment, ECF No. 80, should be **DENIED.**

**IN CHAMBERS** this 29th day of January, 2019.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**